1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KAITLYN LAWRENCE,                        No. 2:23-cv-01005-DJC-AC

12                  Plaintiff,

13   v.                                        ORDER

14   FINICITY CORPORATION,

15                  Defendant.

16

17          In 2023, Plaintiff Kaitlyn Lawrence filed a Complaint on behalf of herself and

18   other consumers regarding an application, website, or online or Internet service

19   provided by Defendant Finicity Corporation.  After Finicity moved to compel

20   arbitration of Plaintiff's claims, this Court denied the motion, concluding that Plaintiff

21   had not consented to arbitration as she lacked adequate notice of the User

22   Agreement containing the arbitration provision.  The Ninth Circuit reversed and

23   remanded, finding there was valid consent and directing this Court to analyze, in the

24   first instance, whether there was sufficient consideration to support the User

25   Agreement.  For the reasons stated below, because the Court finds there is sufficient

26   consideration, Finicity's motion to compel arbitration is GRANTED.

27   ////

28   ////

1   **BACKGROUND**

2       As the facts are well known to the parties and addressed in the Court's prior

3   order, (*see generally* Underlying Order (ECF No. 37)), the Court will not recite them

4   except when necessary.  As to the relevant procedural history, on August 21, 2023,

5   Finicity filed a Motion to Compel Arbitration along with a Motion to Change Venue or

6   Dismiss.  (Arb. Mot. (ECF No. 17); MTD (ECF No. 19).)  The Court denied the Motion to

7   Compel Arbitration, finding that Finicity failed to provide reasonably conspicuous

8   notice of its terms and conditions relating to the User Agreement, which contained the

9   arbitration provision, such that Plaintiff did not knowingly consent to those terms.[1]

10  (*See generally* Underlying Order.)

11      Finicity appealed, and the Ninth Circuit reversed and remanded.  (9th Cir. Mem.

12  (ECF No. 46); 9th Cir. Mandate (ECF No. 47).)  Specifically, the Ninth Circuit concluded

13  that both the transactional context and the visual presentation of Finicity's disclosure

14  page provided Plaintiff with reasonably conspicuous notice of Finicity's terms, and that

15  by clicking "Next," she unambiguously manifested her assent to the User Agreement.

16  (9th Cir. Mem. at 4.)  Having decided the threshold issue of consent, the Ninth Circuit

17  directed this Court to address, in the first instance, whether the User Agreement was

18  supported by sufficient consideration.  (*Id.*)  The parties filed supplemental briefing on

19  that limited issue.  (Suppl. Arb. Opp'n (ECF No. 51); Suppl. Arb. Reply (ECF No. 52).)

20  On October 16, 2025, Plaintiff filed a Notice of Supplemental Authority (ECF No. 54)

21  and, on October 22, 2025, Finicity filed objections (ECF No. 55).[2]  The Motion to

22  Compel Arbitration is now fully briefed.

23

24

25  ───────────────

    [1] As the Court limits its discussion in this Order to the User Agreement and the arbitration provision, it
26  will not revisit its prior ruling denying in part the Motion to Change Venue or Dismiss Complaint.

27  [2] Contrary to this Court's standing order for civil cases, Plaintiff included argument in connection with
    the notice of supplemental authority.  As Plaintiff did not seek leave to file a sur-reply, the Court will not
28  consider any of the legal arguments advanced in the notice.

1        **LEGAL STANDARD**

2        The Federal Arbitration Act ("FAA") governs arbitration agreements.  9 U.S.C.

3    § 2.  The FAA affords parties the right to obtain an order directing that arbitration

4    proceed in the manner provided for in the agreement.  *Id*. § 4.  Under the FAA,

5    federal courts must apply state-law principles that govern the formation of contracts

6    when determining whether the specific dispute between the parties is one that they

7    agreed to arbitrate.  *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025).

8    To decide on a motion to compel arbitration, a court must determine: (1) whether a

9    valid agreement to arbitrate exists and, if it does, (2) whether the agreement

10   encompasses the dispute at issue.  *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011,

11   1017 (9th Cir. 2016).

12       Arbitration is a matter of contract, and the FAA requires courts to honor parties'

13   expectations.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011) (citing *Rent-*

14   *A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67–69 (2010)).  However, parties may use

15   general contract defenses to invalidate an agreement to arbitrate.  *See id*. at 339.

16   Thus, a court should order arbitration of a dispute only where satisfied that neither the

17   agreement's formation nor its enforceability or applicability to the dispute is at issue.

18   *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010).  "Where

19   a party contests either or both matters, 'the court' must resolve the disagreement."

20   *Id*. at 299.  If a valid arbitration agreement encompassing the dispute exists,

21   arbitration is mandatory.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).

22   Under section 3 of the FAA, a court, "upon being satisfied that the issue involved . . . is

23   referable to arbitration under such an agreement, shall on application of one of the

24   parties stay the trial of the action until such arbitration has been had in accordance

25   with the terms of the agreement . . . ."  9 U.S.C. § 3.

26       The party seeking to compel arbitration bears the burden of proving by a

27   preponderance of the evidence the existence of a valid agreement to arbitrate.  *See*

28   *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).  In

1  resolving a motion to compel arbitration, "[t]he summary judgment standard [of

2  Federal Rule of Civil Procedure 56] is appropriate because the district court's order

3  compelling arbitration 'is in effect a summary disposition of the issue of whether or not

4  there had been a meeting of the minds on the agreement to arbitrate.'" *Hansen v.*

5  *LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting *Par-Knit Mills, Inc. v.*

6  *Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)).  Under this standard of

7  review, "[t]he party opposing arbitration receives the benefit of any reasonable doubts

8  and the court draws reasonable inferences in that party's favor, and only when no

9  genuine disputes of material fact surround the arbitration agreement's existence and

10  applicability may the court compel arbitration." *Smith v. H.F.D. No. 55, Inc.*, No. 2:15-

11  cv-01293-KJM-KJN, 2016 WL 881134, at *4 (E.D. Cal. Mar. 8, 2016).  A material fact is

12  genuine if "the evidence is such that a reasonable jury could return a verdict for the

13  nonmoving party." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992)

14  (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Conversely,

15  "[w]here the record taken as a whole could not lead a rational trier of fact to find for

16  the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec.*

17  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

18  **DISCUSSION**

19  Plaintiff contends that the User Agreement containing the arbitration provision

20  lacks consideration because Finicity had a pre-existing duty to provide "bank

21  connectivity" services to EveryDollar users like herself.  (Suppl. Opp'n at 6.)  Plaintiff

22  next argues that Finicity's promise to arbitrate disputes is illusory and lacks

23  consideration because, in Clause 8, Finicity purportedly retains unilateral power to

24  change the agreement as to only some disputes.  (*Id.* at 10–11.)

25  Finicity counters that it does provide services demonstrating valuable

26  consideration, such as "gather[ing] data from PNC Bank," and securing that data "by

27  encryption."  (Suppl. Reply at 7.)  Finicity also asserts that Plaintiff misreads Clause 8

28

4

1  and that it is not a unilateral modification clause rendering the overall arbitration

2  agreement illusory.  (*Id.* at 9–14.)  The Court addresses each argument in turn.

3  **I.  Valuable Consideration**

4      California Civil Code section 1605 defines consideration as follows:

5          Any benefit conferred, or agreed to be conferred, upon the
           promisor, by any other person, to which the promisor is not
6          lawfully entitled, or any prejudice suffered, or agreed to be
           suffered, by such person, other than such as he is at the time
7          of consent lawfully bound to suffer, as an inducement to the
           promisor, is a good consideration for a promise.
8

9  "It is not enough, however, to confer a benefit or suffer prejudice for there to be

10  consideration. . . .[T]he benefit or prejudice must actually be bargained for as the

11  exchange for the promise."  *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1006 (2016);

12  *see also Jara v. Suprema Meats, Inc.*, 121 Cal. App. 4th 1238, 1248 (2004) ("[T]he

13  Supreme Court authoritatively adopted the concept of consideration as a bargained-

14  for exchange").  In assessing "good consideration," California courts "direct legal

15  analysis to the process by which the parties had arrived at that exchange–[asking] was

16  it the product of a bargain?"  *Jara*, 121 Cal. App. 4th at 1249 (citations and internal

17  quotation marks omitted).  The Civil Code section expresses this analytical emphasis

18  on bargain by the phrase "as an inducement to the promisor."  Cal. Civ. Code § 1605.

19      **A.  Finicity's Services**

20          The issue before the Court is whether EveryDollar's original inducement offer of

21  "bank connectivity" is legally distinct from the services Finicity offers (and Plaintiff

22  accepted), which Finicity describes, in part, as "facilitating and securing this [bank]

23  connection."  (Suppl. Reply at 8.)  Finicity contends it provides additional valuable

24  services such that the Court should find sufficient consideration.  (*Id.* at 7.)  Keeping in

25  mind that "all the law requires for sufficient consideration is the proverbial

26  'peppercorn,'" *San Diego City Firefighters, Local 145 v. Bd. of Admin. of San Diego

27  City Emps.' Ret. Sys.*, 206 Cal. App. 4th 594, 619 (2012) (citations omitted), the Court

28

1 │ agrees with Finicity that there is sufficient consideration to support the User

2 │ Agreement between the parties.

3 │     Taking a step back, the Court first evaluates the terms "bank connectivity," the

4 │ offer Plaintiff accepted when first forming a contract with EveryDollar.  When

5 │ interpreting words in contract disputes, California courts give them "their ordinary

6 │ sense, according to the plain meaning a layperson would attach to them."  *Gravillis v.*

7 │ *Coldwell Banker Residential Brokerage Co.*, 143 Cal. App. 4th 761, 774–75 (2006)

8 │ (citation omitted).  "The purpose of the law of contracts is to protect the reasonable

9 │ expectations of the parties."  *Id.* (citations omitted).  And "in construing arbitration

10 │ provisions, courts may also consider the subject matter of the agreement and the

11 │ industry involved."  *Id.* (citations omitted).

12 │     While in the Court's view the phrase "bank connectivity" is straightforward and

13 │ readily understood, to avoid any doubt the Court looks to the dictionary definition of

14 │ the words "bank" and "connectivity" to further understand their plain meaning.

15 │ Merriam-Webster's definition for the noun "bank" is "an establishment for the custody,

16 │ loan, exchange, or issue of money, for the extension of credit, and for facilitating the

17 │ transmission of funds."[3]  Next, the definition for the noun "connectivity" is "the ability

18 │ to connect to or communicate with another computer or computer system."[4]  Thus, an

19 │ ordinary person would likely understand EveryDollar's offer of "bank connectivity" to

20 │ mean the ability to communicate with and access one's bank and its computer

21 │ systems about the account funds held there.

22 │     Turning to Finicity's User Agreement, the definition of "services" includes,

23 │ among other things, "retrieval of financial records and other Consumer Data . . . from

24 │ you or your Provider . . . as directed and/or authorized by you."  (User Agreement

---

25 │ [3] Definition of "bank" (noun): Merriam-Webster Dictionary Online (2025) <https://merriam-
26 │ webster.com/dictionary/bank> [as of Sept. 30, 2025], archived at <https://perma.cc/KL76-UNMG>.

27 │ [4] Definition of "connectivity" (noun): Merriam-Webster's Dictionary Online (2025) <
    https://www.merriam-webster.com/dictionary/connectivity> [as of Sept. 30, 2025], archived at
28 │ <https://perma.cc/54AV-LGPA>.

(ECF No. 21-1) ¶ 1.)  Moreover, EveryDollar's website explains that "Finicity is the third-party provider we use to facilitate the connection between your bank and EveryDollar," which helps to "maintain the privacy and security of [Plaintiff's] bank accounts."  (Suppl. Reply at 7.)  Thus, while it facially appears that Finicity is offering "bank connectivity," a service to which Plaintiff is already entitled by means of the prior payment to EveryDollar, it is not all that Finicity offers.  The language of the User Agreement makes plain that Finicity also facilitates and secures a robust collection of "Consumer Data," in addition to other services:

> The term "Services" includes, but is not limited to, the provision of any of our products and services, including verification of income, verification of assets, verification of employment, *retrieval of financial records and other Consumer Data* (as hereafter defined) from you or your Provider(s) of Provider Services (each term as hereafter defined) as directed and/or authorized by you pursuant to the terms of this Agreement, regardless of the manner in which you receive or benefit from the Services, whether by email or mail, through a website or mobile application, by telephone, or through any other mechanism by which a Service is performed by us in accordance with this Agreement.

(User Agreement ¶ 1.) (italics added).  The End User Agreement clarifies that "Consumer Data" includes both "Provider Account Data" and "Uploaded Data."[5]  (*Id.* ¶ 3.)  For example, Finicity is authorized to "access, use and share [Plaintiff's] Provider Account Data," "(i) collect [Plaintiff's] Consumer Credentials and Uploaded Data, (ii) instruct Provider on [Plaintiff's] behalf to provide Provider Account Data to Finicity in order to provide Services . . . (iii) retain and use . . . Consumer Credentials for provision of the Services . . . (v) compare Provider Account Data and Uploaded Data . . . and/or (vi) disclose and share [Plaintiff's] Consumer Data to service providers and/or resellers to use in accordance with applicable law and for research and

---

[5] "Provider Account Data" includes "account access number(s), password(s), security question(s) and answer(s), account number(s), login information, and any other security or access information, and the actual data in your account(s) with such Provider(s) such as bank and other account balances, credit card charges, debits and deposits."  (User Agreement ¶ 3.)  In turn, "Uploaded Data" encompasses user-uploaded "financial and/or employment documents, statements, records, or other information," which is "stored and used in the Services."  (*Id.*)

1   development." (*Id.*) If that were not clear enough, the End User Agreement later

2   reinforces that Finicity and its third-party affiliates are authorized to "collect [Plaintiff's]

3   Consumer Data, (b) reformat and manipulate such Consumer Data, (c) create and

4   provide hypertext links to your Provider(s), (d) access the Providers' websites using

5   your Consumer Data, (e) update and maintain [Plaintiff's] account information, (f)

6   address errors or service interruptions, (g) enhance the type of data and services we

7   can provide to you in the future, and (h) take such other actions as are reasonably

8   necessary . . . ." (*Id.*) The services that Finicity offers seemingly go beyond mere

9   ability to access one's bank account about the funds held there. And Plaintiff has

10  conceded that Finicity "collects users' login credentials for purposes that far exceed

11  the disclosed scope . . . and acquires massive amounts of data . . . ." (Compl. ¶¶ 18–

12  19.) As such, the breadth of services Finicity provides have some value, which is all

13  that is necessary. "[T]he *quantum* of consideration is generally irrelevant as long as it

14  has some value." *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 415 (2007) (cleaned

15  up and citation omitted).

16          The primary case Plaintiff provides is distinguishable. In *Seneca v. Homeaglow,*

17  *Inc.*, the court denied a motion to compel arbitration where it found that defendant's

18  modified terms and conditions, which plaintiffs purportedly accepted, lacked

19  consideration. No. 8:23-cv-02308-CJC-ADS, 2024 WL 750029, at *4 (C.D. Cal. Feb. 7,

20  2024). In *Seneca*, the plaintiffs agreed to and paid for cleaning services for a certain

21  monthly fee, accepting upfront certain terms on defendant's website. *Id.* at *4–5.

22  Subsequently, when plaintiffs reached a different page to choose a cleaner and

23  schedule the cleaning service, defendant presented its modified terms and

24  conditions, including the arbitration provision. *Id.* at *5. The court found that

25  defendant was either attempting to form a new contract or modify an existing contract

26  and "sought to extract additional value—such as abandoning important rights—from

27  Plaintiffs without providing any additional consideration in turn." *Id.* Concluding

28  there was no consideration to support the attempted contract modification, the court

denied the motion to compel arbitration.  *Id.* at *6.  Unlike in *Seneca* where the defendant seeking to enforce the arbitration provision was the same entity who made the website and formed the original contract with plaintiffs, here, Plaintiff is not suing the app provider EveryDollar, but third party Finicity.  The supplemental authority Plaintiff provides is distinguishable for the same reason.  In *Fagan v. Nexo Capital Inc.*, the court found that an amendment to a contract between the original contracting parties was unsupported by new and additional consideration.  No. 4:24-cv-466, 2025 WL 2446301, at *15 (E.D. Tex. Aug. 25, 2025).  Here, there is no proposed amendment at issue, but an entirely separate agreement between Plaintiff and third party Finicity.

As explained above, the Court concludes that Plaintiff formed an independent contract with Finicity who offered a variety of services, over and above bank connectivity, and which is supported by consideration.

**B.  Agreement to Arbitrate**

In the interest of completeness, the Court addresses Plaintiff's second argument.  The Ninth Circuit has held that a "promise to be bound by the arbitration process itself serves as adequate consideration."  *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (2002).

Plaintiff contends that Finicity's promise to be bound by the arbitration process is illusory and lacks consideration because Finicity can unilaterally modify the arbitration agreement as it relates to disputes involving Finicity's <u>websites</u> but not as to Finicity's <u>services</u>.  (*See* Suppl. Opp'n at 13.)  Finicity advances several reasons why Plaintiff misreads Clause Eight, with which the Court largely agrees

Section 11 of the End User Agreement contains the Arbitration Agreement.  The first sentence provides that "Finicity and [Plaintiff] agree to arbitrate all disputes and claims between us arising out of this Agreement directly related to the Services or Websites . . . . This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us directly relating to the provision of any

1    Service and/or [Plaintiff's] use of any Website subject to arbitration to the fullest extent

2    permitted by law." (User Agreement ¶ 11(1).)  In turn, Clause Eight of the Arbitration

3    Agreement explains that,

4           [n]otwithstanding any provision in this Agreement to the
           contrary, [the parties] agree that if Finicity makes any
5           change to this arbitration provision (other than a change to
           the Notice Address) during the term, or subsequent to
6           [Plaintiff's] purchase of any Service, [Plaintiff] may reject any
           such change and require Finicity to adhere to the language
7           in this provision as written at the time of [Plaintiff's]
           enrollment or purchase if a dispute between [the parties]
8           arises regarding such Service.

9

10   (*Id.* ¶ 11(8).)  Plaintiff unduly focuses on the phrase "regarding such Service" to

11   contend that she has no right to reject any changes to arbitration agreement

12   involving other non-Service-related claims, such as her claim that the design of

13   Finicity's widget deceived her into entering her bank credentials.  Plaintiff

14   claims that the design of the widget "precedes the performance of Finicity's

15   bank connectivity services." (Suppl. Opp'n at 11.)  Plaintiff has it backwards.  As

16   figures 7, 8, and 9 in the Complaint demonstrate, the first opportunity at which

17   Plaintiff can affirmatively enter any bank credentials is on the screen that

18   appears *after* she has already clicked "Next" and affirmatively enrolled in

19   Finicity's User Agreement and privacy policy.  (Compl. ¶ 24.)  Thus, Plaintiff's

20   phishing claim related to the design of Finicity's widget, along with any service-

21   related claims, arises after this affirmative exchange.  (*Id.*)

22          The Court does not interpret the language of Clause Eight to be a "hedged

23   modification provision" permitting changes to only service-related claims but

24   understands it to grant Plaintiff the express power to reject any modifications to the

25   arbitration agreement that Finicity might propose.  By its terms, Clause Eight

26   empowers Plaintiff to "require Finicity to adhere to the language in this provision as

27   written *at the time of your enrollment* or purchase." (User Agreement ¶ 11(8).) (italics

28   added).  Because Plaintiff "enrolled" when she accepted the terms of the User

1    Agreement and its arbitration provisions, all her claims, including any design-related

2    claims, are subject to arbitration as the first sentence of section 11 states: "Finicity and

3    [Plaintiff] agree to arbitrate all disputes and claims between us arising out of this

4    Agreement directly related to the Services or Websites." (*Id.* ¶ 11(1).)

5        Accordingly, because Finicity promises to be bound by the arbitration

6    process and it is not an illusory promise, it constitutes sufficient consideration.

7    *Najd*, 294 F.3d at 1109.

8                                    **CONCLUSION**

9        For the foregoing reasons, IT IS HEREBY ORDERED THAT:

10       1.  Defendant's Motion to Compel Arbitration (ECF No. 17) is GRANTED; and

11       2.  The Clerk of the Court is directed to administratively close this case.

12

13       IT IS SO ORDERED.

14   Dated:   **December 9, 2025**

15                                    Hon. Daniel J. Calabretta
                                      UNITED STATES DISTRICT JUDGE

16

17

18   DJC8 – Lawrence.23cv1005.motion to compel arbitration

19

20

21

22

23

24

25

26

27

28